IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TIMOTHY J. MCCUE, M.D., | CV 19–147–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| INTEGRA IMAGING, P.S., a Washington Professional Service Corporation, | |
| Defendant. | |

Before the Court is Defendant Integra Imaging's ("Integra") Motion for Summary Judgment.[1] (Doc. 16.) For the reasons that follow, the motion is denied.

## BACKGROUND

Dr. McCue ("McCue") is a Montana physician who was hired by Missoula Radiology in February 2016. (Doc. 26 at 3.) His employment contract with

---

[1] This motion comes before the Court with an odd posture. On January 24, 2020, at the Court's scheduling conference, the parties agreed that there was a potentially dispositive threshold issue of whether Washington or Montana law government Dr. McCue's ("McCue") employment contract with Integra. The parties asked the Court to stay discover and allow them to brief the legal issue. On February 14, 2020, McCue submitted his opening brief arguing that Montana law governed the contract. (Doc. 14.) Then on March 6, 2020, Integra submitted a response brief styling it as a motion for summary judgment and arguing that McCue's contract was governed by Washington law. (Doc. 16.) Integra stopped just short of asserting that under Washington law McCue's termination was lawful. The parties each submitted a reply. (Docs. 17, 21.) Then on May 28, 2020, the Court agreed to construe the briefs as a motion for summary judgment brought by Integra. (Doc. 23.) As the moving party, the Court ordered Integra to supplement its motion with a statement of undisputed facts. (*Id.*) McCue subsequently filed a statement of disputed facts. (Doc. 26.)

1

Missoula Radiology ran for two years unless terminated earlier. (*Id.*) The parties agree that at the time of relevant events, McCue's contract with Missoula Radiology was no longer in force. (*Id.* at 3–4.)

Integra is a medical group headquartered in Washington. (*Id.* at 2.) On January 1, 2017, Integra merged with Missoula Radiology. (*Id.* at 8.) McCue was not involved in the merger negotiations. (*Id.* at 4.)

In early November of 2016, at a meeting held in Missoula, McCue was provided a copy of Integra's proposed employment contract. (*Id.* at 6.) Executives from Integra travelled to Montana to review the contract with the radiologists and respond to any questions. (*Id.*) During that meeting, McCue and the other radiologists each signed an employment contract. (*Id.*)

These contracts went into effect on January 1, 2017 and contained the following provisions:

> 8.1 <u>Termination by the Corporation Without Cause.</u> The Corporation, upon the vote of 2/3rds of its Board, may terminate this Agreement without cause at any time upon 60 day's written notice to Employee . . . .
>
> 16. <u>Governing Law</u>. This Agreement shall be interpreted, construed, and governed according to the laws of the state of Washington.

(*Id.* at 6.)

As an employee of Integra, McCue provided medical services to citizens of Montana and Washington. (*Id.* at 9.) He acquired an active license to practice medicine in Washington in February of 2017. (*Id.* at 9.) Around 20% of the

2

radiology scans read by McCue were for Washington patients, and 80% were for Montana patients. (*Id.*) He performed all work in Missoula, Montana. (*Id.* at 5.)

On October 5, 2018, Integra provided written notice informing McCue that he had been terminated without cause pursuant to Section 8.1 of their Agreement. (*Id.* at 13.) McCue filed this action on August 28, 2019. (Doc. 1.)

## STANDARD OF REVIEW

A court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the burden shifts to the opposing party to demonstrate that summary judgment is not proper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## DISCUSSION

The central issue is whether Washington or Montana law applies. Washington employment law classifies all employees as at-will, meaning that under most circumstances, a Washington employee can be fired at any time for any reason. Washington State Department of Labor and Industry, *Termination & Retaliation*, https://lni.wa.gov/workers-rights/workplace-policies/termination-

3

retaliation. This is not the case in Montana. Under Montana's Wrongful Discharge from Employment Act ("WDEA") an employee outside of his or her probationary period may only be terminated for "good cause." Mont. Code Ann. § 39–2–904(1)(b). Neither party disputes that McCue signed an employment contract with Integra that contained a choice of law provision selecting Washington to govern the contract—the contract also expressly established McCue's status as an at-will employee. Nor does either party dispute that the contract was to be performed in Missoula, Montana. Although McCue raises allegations that Integra's employment contract was a take-it-or-leave-it contract of adhesion, that issue is not squarely before the Court, and need not be decided at this juncture. The only question is whether under Montana's conflict of laws analysis the parties' choice of law is valid. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir 2014).

The Montana Supreme Court has adopted the Restatement (Second) Conflict of Laws § 187. *Casarotto v. Lombardi*, 886 P.2d 931, 935 (Mont. 1994), *rev'd on other grounds sub nom.* Doctor's Assocs. Inc. v. Casarotto, 517 U.S. 681 (1996). The parties agree that the relevant analysis requires application of § 187, but they offer different readings of the text. The text in full states:

> **§ 187 Law of the State Chosen by the Parties**
>
> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the

4

> parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

*Restatement (Second) of Conflict of Laws* § 187 (1971).

Integra asserts that the Court should enforce the choice of law provision without conducting a public policy analysis because this issue is governed exclusively by subsection (1). (Doc. 16 at 14.) Integra argues that because McCue's at-will employment is an issue which the parties "could have resolved by an explicit provision in their agreement directed to that issue," section (1) is dispositive and requires the Court to enforce that choice without considering policy implications. (*Id.*) Integra asserts that subsections (1) and (2) are "mutually exclusive." (Doc. 21 at 3). To support this reading, Integra principally cites two

5

cases—one from the District of Arizona that provides direct support for its contention, *Concrete Mgmt. Corp. v. Double AA Builders of Cal., Inc.*, No. CV-08-0322-PHX-LOA, 2009 WL 32742, at *6 (D. Ariz. Jan. 5, 2009), and a Montana Supreme Court opinion that Integra contends exemplifies the correct analysis, *Burchett v. MasTec N. Am., Inc.*, 93 P.3d 1247 (Mont. 2004).

Turning to the latter first, in *Burchett*, the Montana Supreme Court favored Montana law to govern a verbal employment contract between a Florida corporation and a Montana resident who was hired as field mechanic for a company that laid fiber optic cable. *Id.* at 1248. Because the contract was never reduced to writing, the parties never expressly decided which state's law to apply. *Id.* at 1248–49. And because Burchett was hired while working in Massachusetts for a job that would be performed across various states, the case defied a straightforward conflicts analysis. *Id.* at 1249.

The Court primarily analyzed the facts under the broad principles defined in § 6 of the Restatement which instructs a court to follow its own state's statutory directive on choice of law or in the absence of one, to consider a number of factors including public policy factors. *Id.* at 1248–49. When it comes to contract disputes, Montana's statute directs Montana courts to apply the law of the "place of performance" and, if none, then to apply the law of the place where the contract was made. *Id.* at 1249 (citing Mont. Code Ann. § 28-3-102). The *Burchett* Court

determined that neither situation applied on the facts because Burchett was employed for transitory work and the contract was formed over the phone between Massachusetts and Oklahoma and neither party had any significant connection to either state. *Id.*

Looking for further guidance, the Court then turned its attention to § 187 of the Restatement, stating that "[w]hen parties specify their choice of law in a contract, that choice will be effectuated subject to the limitations in section 187(2)." *Id.* (quoting *M + W Zander v. Scott Co. of California*, 78 P.3d 118 (Or. App. 2003). Although there was no express choice of law, the Court determined that the parties had impliedly agreed that Montana law governed the contract because that parties "agreed that income taxes, unemployment insurance premiums, and wages were to be paid to Montana." *Id.* Without determining whether application of Montana law would be contrary to public policy, the Court then returned to analyze the remaining factors under § 6. *Id.* at 1251–52.

Integra asserts that *Burchett* provides the correct analysis because the Court resolved the case under 187(1) without conducting any public policy cross check. (*See* Doc. 16 at 17–18.) The Court disagrees. *Burchett* is both legally and factually inapposite.

Factually speaking, *Burchett* addressed whether a court would apply Montana law to an employment contract between a Montana employee and an out-

7

of-state corporation when the parties impliedly consented to Montana law. In contrast, the issue here is whether the Court will uphold an express selection of the foreign corporation's law to an employment contract with a Montana employee. On these facts, *Burchett* is legally distinguishable because there the WDEA ran with the parties' choice of law selection, and here, Montana's policy as expressed in the WDEA cuts against the parties' choice. Although the Court's opinion in *Burchett* certainly could have been clearer on this point, it likely did not conduct a public policy cross-check because, for the obvious reason, it was unnecessary to decide whether application of Montana law would offend Montana's public policy. Moreover, in relying on *Burchett* for support, Integra ignores *Burchett*'s instruction that "[w]hen parties specify their choice of law in a contract, that choice will be effectuated subject to the limitations in section 187(2)"—that is, subject to public policy restrictions.[2] *Id.* at 1249. Because *Burchett* is clear in how it reads §187, the Court will give no weight to the contrary reading of the District of Arizona in interpreting the Arizona Supreme Court's conflicts analysis. *See Concrete Mgmt. Corp.*, 2009 WL 32742, at *6. Having concluded that Montana courts read

---

[2] This reading is also consistent with the Ninth Circuit's interpretation of Montana law. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2011) ("The law of the state chosen by the parties . . . will be applied . . . unless . . . application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state[.]").

8

§ 187(1) and (2) together, it is not necessary for the Court to address Integra's remaining arguments on this point.

McCue is correct that the Montana Supreme Court's opinion *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389 (Mont. 2008), sets forth the relevant three-part test derived from the Restatement. *Modroo* instructs that the parties' choice of law will be upheld unless:

> (1) . . . but for the choice-of-law provision, Montana law would apply under § 188(1) of the Restatement;
>
> (2) if Montana has a materially greater interest in the particular issue than the state chosen by the parties as determined by § 188(2); and
>
> (3) if applying the state law chosen by the parties would contravene a fundamental policy of Montana.

*Id.* at 400 (citing Restatement § 187(2)(b)). The Court will analyze each element below.

### I.  Whether Montana law would apply under § 188

Turning to the first step, McCue is correct that, absent the choice of law provision, Montana law would govern the contract. Section 188(1) applies when the parties do not specify an effective choice of law and it instructs that the law of the "most significant place" will govern the contract. Restatement § 188. In *Modroo*, the Court clarified that, as described in Montana Code Annotated 28-3-102, the "most significant place" is the place of performance. *Id.* at 400–01. In the context of an insurance coverage dispute over a claim that accrued in Montana

9

under a policy issued by an out-of-state insurer, the Court looked at factors such as "where an insured is entitled to receive benefits, has incurred accident related expenses, or is entitled to judgment" as well as where the insured lives, works, and pays taxes. *Id.* at 401.

All of these factors support application of Montana law. At all relevant times, McCue lived in Missoula. (Doc. 14 at 3.) He worked exclusively from Integra's Missoula facility. (*Id.* at 6.) He never travelled to Integra's Washington facilities. (*Id.*) His salary was directly deposited into his Montana bank account, and he paid state income taxes solely to Montana. (*Id.*) Under the first element Montana law would apply to the contract but for the parties' explicit choice of law.

## II. Whether Montana has a materially greater interest

The second element—whether Montana has a "materially greater interest" in the employment contract—is certainly related to the first element although the inquiry itself is broader in scope. To determine whether Montana's interest is materially greater than Washington's, courts look to the factors enumerated in § 188(2) of the Restatement: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* at 402. These contacts are evaluated according to their relative importance to a given case. *Id.*

10

The place of contracting is generally determined by where the contract was executed. *See id.* at 402 (insurance policy was purchased in Ohio, and therefore Ohio was the place of contracting). The place of negotiation and the place of performance bear greater significance to determine the applicable law because such a state "has an obvious interest in the conduct of the negotiations" and the subsequent agreement. *Id.* (citing § 188 cmt. e). The location of the subject matter bears no significance when the subject matter does not constitute a specific physical thing or a localized risk. *Id.* The parties' residence and place of incorporation "bear little significance when considered separately, but gain importance based on their relationship to the contract issue involved and the other contacts." *Id.*

Here, Montana has the materially greater interest. Montana is the place of contracting because the employment contract was executed in Missoula. As for the place of negotiation, it is unclear whether broader merger negotiations primarily took place in Washington or Montana. However, any negotiation pertaining to McCue's contract (to the extent there was any) would have occurred when executives from Integra travelled to Missoula to discuss the proposed contract with him and the other radiologists. Furthermore, the place of performance weighs in Montana's favor. McCue lived and worked in Missoula throughout his employment with Integra. Although he performed work for patients in both states,

only 20% of his total services were performed for Washington patients, while 80% were performed for Montana patients. As to final factor, McCue was domiciled in Montana as evidence by the fact that he worked, lived, and paid taxes in Montana. Integra is headquartered in Washington which makes this final factor neutral. Accordingly, because the first, second, and third factors tilt towards Montana, the fourth factor is inapplicable, and the fifth factor is neutral, the Court finds that Montana has a materially greater interest.

### III. Whether application of Washington law would contravene Montana's public policy

The final element asks whether applying Washington law to the contract would contravene a fundamental policy of Montana. Montana defines policy broadly as laws established by express legislative enactments. *Trammel v. Brotherhood of Locomotive Firemen and Enginemen*, 253 P.2d 329, 334 (Mont. 1953). The stated purpose of Montana's WDEA is to establish the rights and remedies with respect to wrongful discharge. Mont. Code Ann. § 39–2–901. As such, the issue is whether Section 8.1 of the Agreement—the Termination Without Cause provision—contravenes the fundamental policies expressed in the WDEA.

In 1987, Montana became the first state to statutorily protect employees from wrongful discharge from employment. Stuart A. Youngblood, *Interpreting Montana's Pathbreaking Wrongful Discharge from Employment Act: A Preliminary Analysis,* 53 Mont. L. Rev. 53, 53 (1992). Pursuant to the WDEA, a

12

discharge is wrongful if the discharge was not for good cause and the employee had completed a probationary period of employment. Mont. Code Ann. § 39–2–904(1)(b). "Good cause means reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." *Id.* § 39–2–903. The WDEA provides the exclusive remedy for wrongful discharge and preempts common law causes of action arising from wrongful discharge. *Id.* §§ 39–2–902, 913. The Act does not extend to individuals employed under a written contract for a specific term. *Id.* § 39–2–912(2).[3]

Prior to the WDEA, Montana's "termination at will" statute governed employment relationships in Montana: "An employment having no specified term may be terminated at the will of either party on notice to the other, except where otherwise provided by this chapter." Mont. Code Ann. § 39–2–503 (repealed 2001). Essentially, the at-will statute allowed an employer to discharge an employee without cause.

In the decade leading up to the WDEA's enactment, Montana courts expanded employers' liability by recognizing common-law contract and tort causes of action arising from wrongful discharge, often resulting in large damage awards.

---

[3] Integra does not argue that McCue was subject to a probationary period nor that his contract falls outside the WDEA as a term contract. For the purpose of resolving this issue, the Court will assume the contract at issue falls within the scope of the WDEA if Montana law applies.

13

William L. Corbett, *Article: Resolving Employee Discharge Disputes Under the Montana Wrongful Discharge Act, Discharge Claims Arising Apart from the MWDA, and Practice and Procedure Issues in the Context of a Discharge Case*, 66 Mont. L. Rev. 329, 331–32; *see also Gates v. Mont. Ins. Co.*, 638 P.2d 1063, 1067 (Mont. 1982) (holding that the implied covenant of good faith and fair dealing applied to employment contracts); *Gates v. Life of Mont. Ins. Co.*, 668 P.2d 213, 214–215 (Mont. 1983) (holding that breach of the covenant of good faith and fair dealing was a tort and allowing plaintiffs to recover punitive and consequential damages). The legislature sought to reverse this trend by restricting damages for wrongful discharge and providing an exclusive remedial process through the WDEA:

> The legislative history of the Act demonstrates that lawmakers perceived an unreasonable financial threat to Montana employers from large judgments in common-law wrongful discharge claims. Testimony in legislative hearings also indicated to legislators that large judgments in common-law wrongful discharge cases could discourage employers from locating their businesses in Montana. The Act's limitations on damages is intended to alleviate these threats.

*Meech v. Hillhaven W., Inc.*, 776 P.2d 488, 504 (Mont. 1989).

In *Meech*, the Court recognized that the WDEA conferred substantial benefits on employers as well as employees. 776 P.2d at 505–06. Assessing the constitutionality of the Act, the Court held that the new restriction on damages served legitimate state interests in promoting economic conditions of the state and

14

providing judicial certainty for resolving employment disputes. *Id.* at 504. Additionally, the Court recognized that the statute represented considerable new protection for Montana employees because employers would no longer be able to discharge an employee without good cause. *Id.* at 506.

In *Whidden v. John S. Nerison, Inc.*, 981 P.2d 271 (Mont. 1999), the Court addressed whether the WDEA superseded and repealed Montana's "termination at will" statute. The Court reasoned that at-will employment "clearly conflicts"[4] with for-cause employment because the law cannot simultaneously require good cause to discharge and also allow for discharge without cause. *Id.* at 274–75. Thus, the Court determined that the WDEA "effectively eliminated" at will employment in Montana. *Id.* at 275.

Here, applying Washington law to the employment contract contravenes Montana's employment policies. The Montana legislature intended the WDEA to provide the exclusive framework for assessing wrongful discharge claims, and the Act effectively balances the interests of employers and employees alike. The contract's termination without cause provision (Section 8.1) clearly conflicts with

---

[4] Integra argues that for public policy to be violated by imposition of an out-of-state law requires more than a mere conflict. (Doc. 12 at 12.) Regardless, in this case, the WDEA does not merely conflict with Washington law. By expressly rejecting "at will termination" the Montana legislature made an important value judgment balancing the interests of both employees and employers alike. To allow Montana employees who would otherwise be subject to the WDEA to contract away this right violates public policy because it compromises the broader economic interests protected by the WDEA; i.e. a violation of public policy.

the WDEA in the same way that Montana's "termination at will" statute conflicted with the WDEA.

Having found all three elements satisfied, the Court now concludes that Montana law governs the contract. Accordingly, Integra is not entitled to judgment as a matter of law.

IT IS ORDERED that Integra's Motion (Doc. 16) is DENIED. The Court will shortly schedule a status conference to set up a scheduling calendar for this case.

DATED this 9th day of July, 2020.

_____
Dana L. Christensen, District Judge
United States District Court